```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
    LOUIS MINELLA,

                              Plaintiff,

              - against -

    EVERGREENS CEMETERY and LOCAL
    UNION NO. 74 OF THE SERVICE
    EMPLOYEES UNION, AFL-CION,

                              Defendants.
----------------------------------------------------------X
```

**MEMORANDUM DECISION**

CV-05-0728 (BMC) (RER)

**COGAN, District Judge.**

This is an action alleging wrongful termination of employment against the plaintiff's former employer and breach of the duty of fair representation against the plaintiff's Union. The Court has previously entered an Order granting the employer's and Union's motions for summary judgment. This Memorandum Decision sets forth the basis for that Order.

## BACKGROUND

Plaintiff has failed to submit a Local Rule 56.1 statement; indeed, plaintiff has failed to submit any factual affidavits or other evidence at all, resting instead on an attorney's affirmation that merely makes argument. Accordingly, the facts are taken from the uncontradicted evidence that defendants have submitted.

Plaintiff was a gravedigger at defendant Evergreens Cemetery (the "Company"), covered under a collective bargaining agreement with the defendant Local 74 of the

Service Employees International Union, AFL-CIO (the "Union"). During the course of his tumultuous employment, plaintiff was fired three times for serious infractions. The terminations were merely the end result of a course of performance that included 17 written warnings for poor performance, excessive absenteeism and insubordination. The first two times that plaintiff was fired, the Union successfully intervened on his behalf and, after the second time, obtained his reinstatement under a "last chance" agreement. The third time, even the Union recognized that there was nothing it could do for plaintiff. Plaintiff then brought this action.

The first termination occurred in 1994, when the President of the Cemetery observed plaintiff eating during a time when he should have been working, and asked him to stop eating and resume work. Plaintiff responded by throwing his trash on a gravesite. The President told him to pick it up and take the rest of the day off as a result of his insubordination. Plaintiff responded with a string of obscenities, which led to his termination. After the Union intervened, the Company converted the termination to an 8-day suspension.

The second termination occurred in 2003, when plaintiff got into a fiery confrontation with a co-worker, and threw a steel "pin" at the co-worker. Plaintiff fortunately missed the co-worker and the "pin" shattered the window of one of the Company's trucks. There were multiple witnesses who described the event this way; plaintiff's version was that he could not remember whether he had thrown the steel "pin" but thought he punched through the truck window with his fist because of his anger with the co-worker. In any event, he was terminated again.

Again, the Union intervened and saved plaintiff's job. Plaintiff agreed to seek anger management counseling, and he also had to execute what is known as a "last chance" agreement, the language of which provides exactly what the term implies. It stated that the violation of any term of the agreement or the collective bargaining agreement or any personnel policy of the Company would constitute cause for termination. The last chance agreement also contained language indicating that plaintiff was entering into it knowingly and voluntarily, and that he had had an opportunity to consult with an attorney before signing it. Plaintiff acknowledged at his deposition that he had, in fact, consulted with the attorney representing him in this action prior to executing the last chance agreement.

By no later than January, 2004, while working under the "last chance" agreement, plaintiff demonstrated a pattern of excessive absences from work, often failing to show up on Mondays and Fridays. By March, he had exhausted his allowable sick leave under the collective bargaining agreement, having taken off eight days. The President warned him on March 4th that he had used up his sick leave for the year, and in no uncertain terms, told him that any future absences would result in his termination. At his deposition, plaintiff acknowledged having received this warning but expressed the belief that the Company had no power to terminate him without first suspending him, although he could not identify any basis for that belief. In any event, plaintiff was thereafter absent from March 15 to March 26, claiming a work-related knee injury. Since the injury appeared to be work-related, the Company did not terminate him.

On June 18, plaintiff telephoned the Company and advised that he was not coming to work because he was "having trouble breathing." The unopposed evidence

3

before the Court compels the conclusion that this statement was a fabrication. When plaintiff did return on June 24, he presented a note dated June 22 from an oral surgeon that said nothing about breathing problems; as a result, plaintiff was sent home and told there would be a meeting to discuss his status on June 28. At the June 28 meeting, when asked why he had waited until June 22 to seek medical attention instead of going to an emergency room on June 18, when he allegedly began having trouble breathing, plaintiff said he did not think anyone would be available on Father's Day weekend, and in any event, he did not want to ruin his own Father's Day weekend.

The Company thereupon terminated plaintiff's employment. Plaintiff acknowledged at his deposition that at or after the meeting, the Union advised him that it would not arbitrate his case; "yes, he [the Union representative] did say that." Specifically, plaintiff testified:

> Q. When Mr. Williams said to you that the union wouldn't arbitrate, what did you take that to mean?
>
> A. I was on my own. That's it. No arbitration is no arbitration.
>
> Q. Did you take it to mean the union wouldn't do anything further for you?
>
> A. Would go no further, right.
>
> Q. Let me ask you this . . . did you say anything to Mr. Williams when he told you the union would go no further?
>
> A. Did I say anything to Mr. Williams? I said yeah, give me a lift to the gate and I have to get my own counsel, that's it.

## DISCUSSION

Plaintiff's complaint states a "hybrid" §301–duty of fair representation claim against the Company and the Union. To prevail on this claim, plaintiff must demonstrate

4

both (1) that the Union breached its duty of fair representation; and (2) that the Company breached its collective bargaining agreement or the last chance agreement. See e.g., Sanozky v. Int'l Ass'n of Machinists & Aero. Workers, 415 F.3d 279, 282 (2d Cir. 2005).

Federal Rule of Civil Procedure 56 provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Andersen v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Once a moving party has met its initial burden to demonstrate that no genuine issue as to any material fact exists, the nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in their favor." Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001). "Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment." Zdziebloski v. Town of Greenbush, 336 F.Supp.2d 194, 201 (N.D.N.Y. 2004) (citing Carey v. Crecenzi, 923 F.2d 18, 21 (2d Cir. 1991)).

In the instant case, plaintiff has failed to raise a genuine issue of material fact as to either his claim against the Company or the Union.

### A. Plaintiff's Claim Against The Union Fails As A Matter Of Law

#### 1. Plaintiff's Claim Against The Union Fails on The Merits

"A union's conduct can be classified as arbitrary only when it is irrational, when it is without a rational basis or explanation." Marquez v. Screen Actor's Guild, Inc., 525 U.S. 33, 46, 119 S.Ct. 292, 142 L.Ed.2d 242 (1988); see also Caputo v. Nat'l Ass'n of

5

Letter Carriers, 730 F.Supp. 1221, 1226 (E.D.N.Y. 1990) ("[T]he Second Circuit has held that decisions made without a rational basis are arbitrary and therefore actionable."). In other words, "a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67, 11 S.Ct. 1127, 113 L.Ed.2d 51 (1991) (citations and internal quotation marks omitted). Additionally, to succeed on a claim that a union's conduct was arbitrary, a plaintiff must not only establish the arbitrariness of the union's actions, but must also demonstrate a causal connection between the union's wrongful conduct and his injury. Spellacy v. Airline Pilots Ass'n-Int'l, 156 F.3d 120, 126 (2d Cir. 1998).

"Proof of mere negligence or errors of judgment on the part of the union is insufficient [to prove a breach of the duty of fair representation].... As long as the union acts in good faith, courts cannot intercede on behalf of employees who may be prejudiced by rationally founded decisions which operate to their particular advantage [sic]." Cook v. Pan Am. World Airways, Inc., 771 F.2d 635, 645 (2d Cir. 1985), cert. denied, 474 U.S. 1109, 106 S.Ct. 895, 88 L.Ed.2d 929 (1986), abrogated on other grounds by Lorance v. AT & T Tech., Inc., 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989). Accordingly, a union does not breach its duty of fair representation when it "fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance." Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1153-54 (2d Cir.1994); see also Wozniak v. Int'l Union, United Automobile, Aerospace & Agricultural Implement Workers of America-UAW,

6

842 F.2d 633, 636 (2d Cir. 1988) ("There is no arbitrariness in failing to process a bad case.") (citing Fristoe v. Reynolds Metals Co., 615 F.2d 1209, 1214-15 (9th Cir. 1980)).

There is nothing irrational about the Union's conduct here. Given the plaintiff's employment history, it might well have been irrational to conclude that plaintiff had a grievable claim. The Union was objectively justified in determining that further proceedings would be futile, and no rational trier of fact could find otherwise.

### 2. Plaintiff's Claim Against The Union is Time-Barred

Claims for breach of the duty of fair representation have a six-month limitations period, DelCostello v. Int'l Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), which accrues "no later than the time when the plaintiffs knew or reasonably should have known that such a breach had occurred." Demchik v. General Motors Corp., 821 F.2d 102 (2d Cir. 1987) (citing King v. New York Telephone Co. 785 F.2d 31, 34 (2d Cir. 1986)); see also Buttry v. Gen. Signal Corp., 68 F.3d 1488, 1492 (2d Cir. 1995) (citing Flanigan v. Truck Drivers Local 671, 942 F.2d 824, 827 (2d Cir. 1991)).

The excerpt from plaintiff's deposition set forth above leaves no doubt that plaintiff knew as of June 28, 2004 that the Union was not going to do anything for him. His claim against the Union accrued on that date.

In opposing defendants' summary judgment motion, plaintiff argues that he is "unsophisticated." But he had already received legal advice from an attorney in connection with his last chance agreement – the same attorney representing him in this action – and it is not too much to have expected him to consult his attorney prior to the expiration of the limitations period. In fact, somewhat remarkably, he testified at his

deposition that he knew he had to get his own counsel. In any event, plaintiff cites no authority for the proposition that unsophistication alone can create an estoppel or toll of the statute of limitations in the face of an express rejection of an alleged duty, and of course there is none.[1]

Because plaintiff has failed to make out a claim against the Union, his claim against the Company must fail. Nonetheless, even if considered on the merits, plaintiff's claim against the Company would also fail.

### B. Plaintiff Has Failed to Demonstrate The Existence of Any Material Fact as to His Claim Against The Company

"Just cause" requires the application of an objective standard, i.e., what would a reasonable employer do when faced with the employee's conduct? See Scott v. Riley Co., 645 F.2d 565, 568, n. 4 (7th Cir. 1981) (quoting Local 205, United Elec. Workers of America v. General Elec. Co., 172 F. Supp. 53 (D. Mass. 1959)); see also Weir v. Anaconda Co., 773 F.2d 1073, 1080 (10th Cir. 1985); Kucinski v. Morning Call, Inc., 145 L.R.R.M. 2870, 1994 WL 66698 (E.D. Pa. March 1, 1994).

Here, under any objective view of the undisputed facts, the Company had just cause to terminate plaintiff's assignment. There was strong circumstantial evidence to show that plaintiff's absences were not due to any medical disability: the number of Mondays and Fridays missed; the proffering of an oral surgeon's note to treat an alleged breathing problem (which note does not even refer to any breathing condition); the fact

---

[1] The only evidence that plaintiff's affirmation refers to on the statute of limitations point is an excerpt from his deposition, in which plaintiff testified that when he returned to work on June 24 and was sent home, a Union official told him on that date to "wait for a telephone call," as if this justifies plaintiff's inaction. Plaintiff's citation of this evidence is highly disingenuous. The record shows that plaintiff received the phone call, which led to the meeting on June 28, where he was expressly told by the Union that it would not act for him.

8

that plaintiff sought no treatment for four days after he called his employer about this alleged breathing problem; and his own admission that he waited because he did not want to ruin his Father's Day weekend. Thus the Company's conclusion that his excuse was unacceptable was rational, not arbitrary. A pervasive pattern of unjustified absences clearly constitutes "just cause" for termination, especially where both a last chance agreement and an express warning of termination from the employer have put plaintiff on notice that future infractions would result in termination.

Plaintiff argues that prior medical excuses had been accepted and thus plaintiff reasonably believed that an oral surgeon's note would suffice, or at most, that he would be suspended, not terminated. However, plaintiff does not even address the overwhelming evidence showing that he had fabricated or at least grossly exaggerated the reason for his absence. Instead, his attorney poses the sarcastic question regarding the Company's President, "Exactly, in which state is Mr. Grassi licensed to practice medicine?" The President's medical qualifications are not the point. The Company was entitled to act reasonably based on the facts before it. No rational trier of fact could find the Company's evaluation of this situation unreasonable.

Plaintiff also argues that other Company employees were not terminated for excessive absence, and thus it was not "company policy" to do so. However, plaintiff offers no evidence to show disparate application of any policy. He offers only the conclusory assertions of his attorney that such instances occurred. That is insufficient to raise an issue of fact. In any event, even if plaintiff could show on an "apples-to-apples" basis that other employees were not terminated in similar situations, that would be legally insufficient. See Conoco, Inc. v. Oil, Chemical & Atomic Workers Int'l Union, 130

L.R.R.M. 2856, 1988 WL 163062 (10th Cir. Sept. 12, 1988) (finding that arbitrator exceeded authority in imposing "all-or-nothing" rule of discipline when employer terminated one employee but not other employees guilty of similar misconduct; employer had "sole responsibility for discipline and discharge for just cause," which includes discretion to determine the appropriate penalty for each employee); see also Herr v. Cineplex Odeon Corp., No. 92 Civ. 5447, 1994 WL 75008, at *5 (S.D.N.Y. March 4, 1994) ("Unequal treatment, if consistent with the contract, does not *per se* show or prove wrongful discharge") (citing Rigby v. Coughlin, 730 F. Supp. 1196, 1199 (N.D.N.Y. 1990) ("A bare statement that employees were treated differently than other union members is not enough to show unfair representation")); Williams v. Simmons Co., 185 F. Supp. 2d 665, 680 (D. Tex. 2001) (refusing to consider whether another employee should have been terminated along with plaintiffs "for such inquiry merely distracts from the issue of whether just cause existed to fire Plaintiffs").

## CONCLUSION

The Court having entered an Order granting defendants' motions for summary judgment, the Clerk is directed to enter a judgment.

Dated: Brooklyn, New York
August 29, 2006

U.S.D.J.